In the Matter of the Estate of OBADIAH HARNED, Deceased.

Surrogate's Court, Kings County, May 14, 1931.

*Hooley & Wilson,* for the administrators.

*Jacob Landy* and *Bernard Cahn,* for William H. Harned, as administrator of the goods, chattels and credits which were of Frances Ireland, deceased, objectant.

*George L. Naught,* for American Surety Company of New York, surety on the bond of Arthur N. Smith and Charles M. Hick, as administrators with the will annexed of the goods, chattels and credits left unadministered which were of Obadiah Harned, deceased.

*Maurice J. Moore* and *John Francis Moore,* for Florence Louise Fanning and Harry M. Smith, respondents.

WINGATE, S. Upon the settlement of the decree in this proceeding, an additional question is raised which was not presented at the time of the main argument and decision (138 Misc. 546). So far as pertinent, the facts affecting this additional point are as follows: Testator died on November 6, 1903, his will being admitted to probate in this court on February 8, 1904. On April 26, 1906, a decree was entered which directed the executors to hold, invest and keep invested, in accordance with the provisions of the will, the sum of $18,752.26, comprising the balance of the estate.

The testamentary provisions thus referred to are found in the " fifth " item of the document, reading: " I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal to my son, James M. Harned during his natural life.

" After his decease I give, devise and bequeath the same to his next-of-kin living at the time of the decease of my son."

The executors of the will were Charles W. Hick and the life tenant, James M. Harned. The former died on February 8, 1916, and the latter on February 17, 1929. Obviously upon the death of the latter named, the life estate fell in, and the fund became distributable to his next of kin then living, who have been determined to be Frances Ireland, Charles M. Hick and J. Paul Hick.

On June 25, 1929, the present accountants applied for and received letters of administration with the will annexed on the estate of Obadiah Harned, and on or about October 10, 1929, without any proceedings had therefor, distributed the avails of the estate to themselves and to three other persons, two of whom, as determined in the former opinion of this court, had no right or claim thereto.

In June, 1930, a compulsory accounting proceeding was instituted against them, in which the proper devolution of the remainder under Obadiah Harned's will was determined.

The sole question now presented is as to the interest on the principal fund of $18,752.26 left in the hands of the executors pursuant to the decree of this court of April 26, 1906, for which accountants are chargeable herein.

It is the contention of the accountants that since in October, 1929, in their improper distribution, they paid out all interest which they had received and they have since received none, they are not liable for any interest in excess of the sum of $593.20 then accounted for. On the other hand, the respondent, representing the estate of Frances Ireland, maintains that they are liable for interest at the legal rate, from the date of the death of the life tenant, namely, February 17, 1929, to the time of the entry of the decree herein.

The accountants' position is founded on the allegation that their improper distribution was based on an honest mistake of fact regarding the identity of the proper distributees, which in turn involved " an intricate question of law."

The court is unable to agree with the latter statement.

It is entirely true that at that time the effect of the saving clauses contained in section 2 of chapter 539 of the Laws of 1905 and section 14 of chapter 240 of the Laws of 1909 had not received judicial construction. Apparently no doubt was entertained respecting the matter until the question was raised before Surrogate Foley in *Matter of Canfield* (136 Misc. 551) in the spring of 1930. That such proper interpretation was not open to serious question is, however, indicated by the fact that Surrogate Foley's determination was unanimously affirmed both by the Appellate Division (231 App. Div. 708) and by the Court of Appeals (256 N. Y. ——).

The honesty of the mistake of the administrators is also not a pertinent consideration in this connection. By the express direction of the will, the next of kin of James M. Harned were entitled to receive the remainder of his estate immediately upon his death, and it has been decided on many occasions that a legatee, from the time his legacy becomes payable, is substantially in the situation of a creditor and that he is, therefore, entitled to receive interest at the legal rate on his legacy from the time it is payable.

This point is well stated by the Appellate Division in *Matter of Barker* (186 App. Div. 317, at p. 322): " In the determination that six per cent was payable after the expiration of the trust period, the surrogate was undoubtedly correct. A legacy has many of the attributes of a debt. It has a definite due date. An action at law may be maintained for it. (Code Civ. Proc. § 1819.) And it draws interest at the legal rate from the date of its maturity. (Code Civ. Proc. § 2721; now Code Civ. Proc. § 2688; *Matter of*

*Rutherfurd*, 196 N. Y. 311; *Bank of Niagara* v. *Talbot*, 110 App. Div. 519; affd., 184 N. Y. 576.) "

The court was affirmed on this point although modified on others (230 N. Y. 364).

Determinations to like effect may be found in *Wheeler* v. *Ruthven* (74 N. Y. 428); *Matter of Rutherfurd* (196 id. 311, 315); *Lupton* v. *Lupton* (2 Johns. Ch. 614, 628); *Hoffman* v. *Pennsylvania Hospital* (1 Dem. 118, 121, 122); *Matter of Oakes* (19 App. Div. 192); *Matter of Runk* (55 Misc. 478, 481); *Matter of Peoples Trust Co.* (106 id. 609); *Matter of White* (129 id. 458); *Matter of Michaelis* (110 id. 185, 188); *Matter of Hussey* (67 id. 32); *Matter of McNamee* (78 id. 324). It has furthermore been decided that the question of the productiveness of the estate during the period is an entirely immaterial consideration in this regard. (*Matter of Oakes*, 19 App. Div. 192, 193; *Clayton* v. *Kingston*, 202 id. 165, 168; *Matter of Rutherfurd*, 196 N. Y. 311, 315.)

The cases cited by the accountants for a contrary determination are not relevant to the issue. As noted in *Matter of Oakes* (19 App. Div. 192, 194), respecting similar citations: " The cases cited by the counsel for the appellant are not in point. The question presented in each of them related to the extent, if any, to which an executor, administrator or trustee should be personally charged because of the manner of his investment of the funds of the estate."

The question in cases of the type at bar is one of the legal right of the legatee. The fact that the administrators with the will annexed made the payment to improper persons in entire good faith has no more relevancy than would a like payment by an ordinary debtor to an improper payee have relevancy in an action by the person to whom the money was really owing.

Whereas, therefore, the court is of the opinion that the administrators are liable for interest at the legal rate for the period during which they improperly withheld payment of the residuary distribution to the proper parties, it is unable to accede to the position contended for by the respondent that such period begins from the date of death of the life tenant. Were this an accounting by the original executors such unquestionably would be the case, but the obligations of these accountants in respect to the estate did not come into existence until the time their letters were issued to them, which was on June 25, 1929. During the intervening period between the date of death of the life tenant and that date, they are accountable only in so far as interest came into their hands upon their subsequent qualification. This is obviously a portion but not all of the $593.20 interest for which they have accounted. The proper portion of this sum to be allocated to the period in

question is capable of ready computation from the figures in the account.

The court, therefore, determines that the accountants are liable for interest at the rate of six per cent from the date of their qualification as administrators with the will annexed to the date of the entry of the decree herein; but for the period prior to that time they are accountable only to the extent that interest was actually received by them.

Proceed accordingly.